**O**

# United States District Court
# Central District of California

| | |
|---|---|
| SAZERAC BRANDS, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ALLOCATED LIQUOR LLC,<br><br>　　　　　Defendant. | Case № 2:22-cv-08467-ODW (SKx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [36]** |

## I.   INTRODUCTION

Plaintiff Sazerac Brands, LLC moves for entry of default judgment against Defendant Allocated Liquor LLC on Sazerac's Complaint for trademark infringement, counterfeiting, false designation of origin, and unfair competition.  (Mot. Default J. ("Motion" or "Mot."), ECF No. 36.)  For the reasons that follow, the Court **GRANTS** Sazerac's Motion.[1]

## II.   BACKGROUND

Sazerac markets and sells alcoholic beverages and distilled spirits, including its award-winning Weller bourbons. (Compl. ¶¶ 12–13, 20, ECF No. 1.)  Sazerac sells its Weller-branded bourbons under the W.L. WELLER trademarks, which have been in

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

use continuously for over four decades. (*Id.* ¶¶ 15, 23.) Sazerac has invested substantial resources in the advertising, marketing, and promotion of its Weller-branded bourbons and owns numerous U.S. trademark registrations for the Weller marks. (*Id.* ¶¶ 16, 23.)

Allocated is a liquor distribution company that re-sells various brands of alcohol online. (*Id.* ¶ 26.) Although Allocated is not authorized to sell Weller-branded bourbon, Allocated advertised and sold Weller-branded bourbon online, including in the form of miniature bottle "gift sets." (*Id.* ¶ 30.) Sazerac has never produced or sold miniature bottles of Weller-branded bourbon. (*Id.*)

Upon learning of Allocated's unauthorized advertising and sale of Weller-branded bourbon, Sazerac's counsel sent Allocated a letter demanding that Allocated cease and desist from selling Weller-branded bourbons and disclose the source of the counterfeit Weller products. (*Id.* ¶ 34, Ex. B ("Cease-and-Desist Letter"), ECF No. 1-2.) Allocated's owner responded that it had purchased the bourbons from a seller on Etsy. (*Id.* ¶ 35.) Allocated removed all Weller products from its website and stopped selling Weller or other Sazerac products. (Decl. Cynthia J. Walden ISO Mot. ("Walden Decl.") ¶¶ 6, 9, ECF No. 36-2.) Allocated's counsel confirmed that Allocated had purchased "around 10 sets" of miniature Weller bottles from an Etsy seller "'about a year ago' and 'had three set[s] le[f]t in the inventory,' which had been 'discarded.'" (*Id.* ¶ 9.) Sazerac requested additional information, but Allocated did not provide it. (Compl. ¶ 35.)

On November 18, 2022, Sazerac filed this action against Allocated asserting federal and state law claims for trademark infringement, counterfeiting, false designation of origin, and unfair competition. (*Id.* ¶¶ 37–80.) In January 2023, Allocated's counsel notified Sazerac that she had been retained only to assist with the Cease-and-Desist Letter and did not represent Allocated in litigation. (Walden Decl. ¶ 18.) After Sazerac served Allocated with the Complaint, and Allocated failed to

timely respond, the Clerk entered Allocated's default. (Proof of Service, ECF No. 18; Entry of Default, ECF No. 31.) Sazerac then filed this Motion for Default Judgment.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a). However, before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements in Rules 54(c) and 55, and Central District Civil Local Rules 55-1 and 55-2. Even when these procedural requirements are satisfied, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Instead, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

Generally, after the Clerk enters a default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the plaintiff's complaint "will be taken as true" except those pertaining to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). A court need not make detailed findings of fact in the event of default, except as to damages. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

### IV. DISCUSSION

Sazerac satisfies the procedural requirements for default judgment and establishes that entry of default judgment against Allocated is substantively appropriate. However, only some of Sazerac's requested relief is warranted.

#### A. Procedural Requirements

Local Rule 55-1 requires that the movant establish: (1) when and against what party default was entered; (2) the pleading upon which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was

properly served with notice, if required under Rule 55(b)(2).  In turn, Rule 55(b)(2) requires written notice on the defaulting party if that party "has appeared personally or by a representative."

Sazerac satisfies these requirements.  On December 20, 2022, the Clerk entered default against Allocated as to Sazerac's Complaint. (Entry of Default.)  Allocated is a limited liability company, not an infant or incompetent person, and the Servicemembers Civil Relief Act does not apply. (Walden Decl. ¶¶ 20–21.)  Finally, Allocated has not appeared in this case, so written notice of the Motion was not required.  Nevertheless, Sazerac served notice of this Motion on Allocated's registered agent. (Proof of Service Mot., ECF No. 39.)  Thus, Sazerac meets the procedural requirements for default judgment.

## B.     *Eitel* Factors

In evaluating whether entry of default judgment is warranted, courts consider the "*Eitel* factors": (1) possibility of prejudice to plaintiff; (2) merits of plaintiff's substantive claim; (3) sufficiency of the complaint; (4) sum of money at stake; (5) possibility of a material factual dispute; (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits.  *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted).  Accordingly, the Court considers these two factors first.

### 1.     Second & Third Eitel Factors

The second and third *Eitel* factors require a plaintiff to "state a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original). Although well-pleaded allegations are taken as true, "claims which are legally insufficient[] are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Sazerac raises claims under federal and California law for trademark infringement, counterfeiting, false designation of origin, and unfair competition. These claims are all subject to the "same legal standards." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012) (federal and California trademark infringement); *Brookfield Commc'n Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 n.8 (9th Cir. 1999) (federal trademark infringement and unfair competition); *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (California unfair competition and federal trademark claims including false designation of origin); *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1072 (C.D. Cal. 2004) (same); *Alixir Co. v. Qué Onda Beverage, Inc.*, No. 2:20-cv-08368-RGK (RAOx), 2021 WL 971057, at *6 (C.D. Cal. Jan. 6, 2021) (same) (citing *Cleary*, 30 F.3d at 1262–63)). The Court therefore analyzes Sazerac's claims together for the purposes of this Motion as a federal trademark infringement claim under the Lanham Act.

To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege "(1) that it has a protectible ownership interest in the mark," *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006), and (2) that the defendant "subsequently and without authorization used" the mark or "a similar mark likely to cause consumer confusion, deception[,] or mistake," *Shalabi*, 352 F. Supp. 2d at 1072.

<u>Protectible Ownership Interest</u>: A plaintiff may establish a protectible ownership interest in a mark through registration, which constitutes prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the right to the mark's exclusive use. 15 U.S.C. § 1115(a).

Sazerac alleges that it has a protectable ownership interest in its Weller marks and submits registration numbers and trademark records in support. (*See* Compl. ¶ 23, Ex. A, ECF No. 1-1; Mot. 7–9.) Accordingly, Sazerac sufficiently establishes that it has a protectible ownership interest in the Weller marks.

<u>Likelihood of Confusion</u>: The likelihood of consumer confusion is a factual determination, normally assessed through multiple factors. *Shalabi*, 352 F. Supp. 2d at 1073 (citing *Accuride Int'l Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534 (9th Cir. 1989)). However, "in cases involving counterfeit marks," the multi-factor assessment is "unnecessary . . . because counterfeit marks are inherently confusing." *Id.* A mark is considered "counterfeit" if it is "identical with, or substantially indistinguishable from" the plaintiff's trademark, regardless of whether the defendant knew of the plaintiff's registration. 15 U.S.C. §§ 1116(d)(1)(B), 1127.

Sazerac alleges that Allocated is selling Weller-branded bourbon products bearing marks identical to the Weller registered trademarks. (Compl. ¶¶ 29–31.) Sazerac submits screenshots of Allocated's now-defunct website offering "Sample gift box set[s]" of miniature Weller-branded bourbons, products which Sazerac does not produce. (*Id.* ¶ 30.) Sazerac further alleges that the miniature bourbons Allocated offered for sale are "nearly identical imitations of genuine WELLER branded products sold by Sazerac," bearing "exact copies of the WELLER Marks." (*Id.* ¶ 31.) Sazerac's allegations that Allocated sold "nearly identical" miniature bourbons bearing "exact copies" of the Weller marks sufficiently establish that the identified products are counterfeit, and therefore inherently confusing. *See Shalabi*, 352 F. Supp. 2d at 1073. Moreover, Sazerac submits evidence that its customers were actually confused by Allocated's counterfeits, as a customer contacted Sazerac seeking to purchase "additional WELLER miniature bottles." (Mot. 12 (citing Walden Decl. ¶ 2).)

Accepting Sazerac's allegations as true, *TeleVideo Sys.*, 826 F.2d at 917–18, Sazerac sufficiently states claims on which it may recover for trademark infringement, counterfeiting, false designation of origin, and unfair competition. Therefore, the second and third *Eitel* factors weigh in favor of entering default judgment against Allocated.

### 2. Remaining *Eitel* Factors

On balance, the remaining *Eitel* factors also weigh in favor of entering default judgment against Allocated. To begin, the first and fourth *Eitel* factors—possibility of prejudice and sum of money at stake—favor default judgment. Sazerac would suffer prejudice absent entry of default judgment because it would be "without other recourse for recovery." *PepsiCo*, 238 F. Supp. 2d at 1177. Further, as discussed below in the damages analysis, the sum of money Sazerac seeks is expressly authorized by statute.

The fifth and sixth factors—possibility of dispute and excusable neglect—also favor default judgment. Sazerac's allegations are accepted as true on default, and Allocated "has made no attempt to challenge the accuracy of the allegations in the complaint." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920, 922 (C.D. Cal. 2010). Sazerac supports its claims with evidence, and the Court's review of the record reveals "no factual disputes . . . that preclude the entry of default judgment." *Id.* Moreover, although Allocated initially retained counsel to respond to Sazerac, it ultimately elected not to continue with legal representation or otherwise appear and defend in this litigation after Sazerac filed its Complaint. (Walden Decl. ¶ 18; Entry of Default.) Accordingly, nothing in the record suggests that Allocated's failure to appear is the result of excusable neglect.

Finally, the seventh factor—policy favoring decisions on the merits—always weighs in a defaulting defendant's favor. However, because Allocated's failure to appear in this action prevents the Court from reaching a decision on the merits, this factor does not prevent the Court from entering judgment by default. *See Duralar Techs. LLC v. Plasma Coating Techs., Inc.*, 848 F. App'x 252, 255 (9th Cir. 2021) (affirming entry of default judgment where all factors except the seventh weighed in the plaintiff's favor).

In sum, the *Eitel* factors weigh in favor of entering default judgment against Allocated on Sazerac's claims under federal and California law for trademark infringement, counterfeiting, false designation of origin, and unfair competition.

### C.  Requested Relief

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Sazerac seeks a permanent injunction, statutory damages, and attorneys' fees. (Mot. 16–24.) The relief Sazerac seeks does not differ in kind from the relief requested in the Complaint. (*See* Compl. ¶¶ A–O.) However, for the following reasons, the Court awards Sazerac some, but not all, of the requested relief.

*1.  Permanent Injunction*

Sazerac requests that the Court permanently enjoin Allocated's infringement and counterfeiting. (Mot. 16–20.)

"The Lanham Act gives the court 'power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation' of a mark holder's rights." *PepsiCo*, 238 F. Supp. 2d at 1177 (quoting 15 U.S.C. § 1116(a)). A plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered an irreparable injury, (2) for which a legal remedy is inadequate, (3) the balance of hardships between the plaintiff and defendant supports an equitable remedy, and (4) the "public interest would not be disserved by a permanent injunction." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 n.11 (9th Cir. 2006) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court . . . ." *eBay*, 547 U.S. at 391.

Sazerac seeks to enjoin Allocated from using the Weller marks and argues a legal remedy is inadequate here because Allocated "will likely continue to willfully infringe" the marks. (Mot. 18.) However, Sazerac submits evidence establishing that, after receiving Sazerac's Cease-and-Desist Letter, Allocated removed the infringing

and counterfeit products from its website. (Walden Decl. ¶ 6.) Allocated also confirmed through counsel that it "was no longer selling WELLER or other Sazerac products" and that any remaining inventory had been "discarded" or would "be promptly destroyed." (*Id.* ¶ 9.) Based on Allocated's response to Sazerac's Cease-and-Desist Letter, Sazerac has not established that Allocated is likely to "continue to willfully infringe." (Mot. 18.) As such, the Court finds that a permanent injunction is not supported by the facts in this case.

   2. *Statutory Damages*

Sazerac seeks statutory damages of between $20,000 and $100,000 per counterfeit mark, for a total between $40,000 and $200,000, to compensate Sazerac's lost profits, punish Allocated's willful infringing conduct, and deter future infringing activity. (Mot. 16, 20–23.)

A plaintiff prevailing on a trademark infringement claim is generally entitled to recover the defendant's profits, actual damages, and the costs of the action. 15 U.S.C. § 1117(a). However, when a defendant has used a counterfeit mark, a plaintiff may elect to request statutory damages instead of actual damages. *Id.* § 1117(c). Section 1117(c) authorizes statutory damages between $1,000 and $200,000 per counterfeit mark per type of good. *Id.* § 1117(c)(1). Where the use of the counterfeit mark was willful, § 1117(c) authorizes "not more than $2,000,000 per counterfeit mark per type of good[]." *Id.* § 1117(c)(2). "In determining the amount of damages for infringement, courts have generally considered whether the amount of damages requested bears a 'plausible relationship' to a plaintiff's actual damages." *Nestlé USA, Inc. v. Gunther Grant, Inc.*, No. 2:13-cv-6754-MMM (ASx), 2014 WL 12558008, at *14 (C.D. Cal. May 13, 2014) (quoting *Adobe Sys., Inc. v. Tilley*, No. C 09-1085 PJH, 2010 WL 309249, at *5–6 (N.D. Cal. Jan. 19, 2010)).

As Allocated failed to appear and defend in this action, Sazerac's actual damages are unknown. In pre-litigation correspondence, Allocated admitted to offering for sale at least ten counterfeit Weller-branded bourbon gift sets for $299.99

each, and to selling at least seven of the sets. (*See* Walden Decl. ¶ 9; Compl. ¶ 4.) Thus, Allocated gained at least $2,099.93 through counterfeit sales. Although Allocated's expenses are unknown and thus cannot be subtracted to calculate Allocated's actual profits, this figure still provides a reference point for Allocated's potential counterfeit profits. This is a consideration in determining a reasonable statutory award. *Nestlé*, 2014 WL 12558008, at *14.

Sazerac elects to recover statutory damages pursuant to § 1117(c), instead of actual damages or Allocated's profits. (Mot. 21–23.) Sazerac emphasizes the need to deter and punish Allocated's willful and deliberate misconduct with damages. (*Id.*) Allocated purchased the counterfeit bourbon gift sets from a seller on Etsy, but Etsy is not a lawful distributor of alcoholic beverages and prohibits the sale of alcohol on its site. (*See* Mot. 10 (citing Etsy Prohibited Items Policy, https://www.etsy.com/ legal/ prohibited/ ?ref=list#Q1).) As such, Allocated knew its prohibited purchase of alcohol from Etsy could not be from an authorized seller of Weller-branded bourbons. Moreover, Allocated sold its offering of Weller-branded bourbons at a premium price, (*id.* at 21), suggesting that Allocated knew the value of the Weller brand and intentionally offered the counterfeit products to obtain a comparable premium profit. These actions support imposing statutory damages to punish and deter Allocated from future infringement.

On the other hand, Allocated promptly responded to Sazerac's Cease-and-Desist Letter by removing the infringing and counterfeit products from its website and discarding or destroying any remaining inventory. Additionally, Allocated confirmed that it was no longer selling Weller or Sazerac products. Although Allocated did not provide Sazerac all of the information Sazerac requested concerning the source of the counterfeit products, Allocated's prompt corrective action indicates it took Sazerac's Cease-and-Desist Letter seriously. The damages awarded should therefore also account for Allocated's prompt corrective action.

Balancing the relevant considerations, and in light of decisions of other courts in this district addressing similar issues, the Court concludes that $15,000 per counterfeit mark, for a total of $30,000 in statutory damages, is appropriate. *See Nestlé*, 2014 WL 12558008, at *16 (awarding $20,000 per infringed mark where defendants used the internet to reach a wider consumer base and caused market confusion, but plaintiff offered no accounting of defendant's profits); *Coach, Inc. v. Am. Fashion Gift*, No. 2:12-cv-07647-MWF (RZx), 2013 WL 950938, at *2 (C.D. Cal. Mar. 12, 2013) (awarding a total of $10,000 in statutory damages where plaintiff's trademarks were highly valuable, with the type of purse at issue selling for around $250, but the record was unclear on the extent of defendants' infringing activity).

### 3. Attorneys' Fees

Finally, Sazerac seeks attorneys' fees pursuant to 15 U.S.C. § 1117(a) and Local Rule 55-3. (Mot. 23–24.)

"[T]he Lanham Act allows an award of attorneys' fees in 'exceptional cases.'" *Nutrition Distrib. LLC v. IronMag Labs, LLC*, 978 F.3d 1068, 1081 (9th Cir. 2020) (quoting 15 U.S.C. § 1117(a)). Such an award of attorneys' fees is permitted but not mandated. *Id.* Whether a case is "exceptional" is determined in light of the totality of circumstances, considering several nonexclusive factors and using a preponderance of the evidence standard. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180–81 (9th Cir. 2016) (discussing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014), and the "parallel and identical" "exceptional" standard in the Patent Act). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Id.* at 1180.

Sazerac does not establish that this case is exceptional so as to warrant an award of attorneys' fees. On October 7, 2022, after receiving Sazerac's Cease-and-Desist Letter, Allocated removed the counterfeit and infringing products from its website and

1  discarded or destroyed the infringing inventory. (Walden Decl. ¶¶ 6, 9.) On
2  October 19, 2022, Allocated's then-counsel confirmed that Allocated was no longer
3  selling Weller or other Sazerac products. (*Id.* ¶ 9.) Sazerac does not demonstrate that
4  these representations were false or erroneous, yet on November 18, 2022, Sazerac
5  initiated this litigation on the grounds that Allocated continued to infringe. (*See*
6  *generally* Compl.) Moreover, other than Allocated's failure to appear and defend,
7  litigation in this case has been straightforward, with substantive filings limited to the
8  initial Complaint and the instant Motion. Accordingly, Sazerac fails to establish that
9  this case is exceptional, and an award of attorneys' fees is therefore not appropriate.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Sazerac's Motion for Entry of Default Judgment against Allocated for trademark infringement, counterfeiting, false designation of origin, and unfair competition. (ECF No. 36.) The Court **AWARDS** Sazerac **$30,000** total in statutory damages. The Court **DENIES** Sazerac's request for a permanent injunction and attorneys' fees. The Court will issue Judgment consistent with this order.

**IT IS SO ORDERED.**

July 3, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**